IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JOHNNY ROBERT YORK,           )
                              )
        Plaintiff,            )          Case No. 3:13-00786
                              )          Chief Judge Haynes
v.                            )
                              )
CAROLYN W. COLVIN,            )
Acting Commissioner of Social Security,  )
                              )
        Defendant.            )

**MEMORANDUM**

Plaintiff, Johnny Robert York, filed this action under 42 U.S.C. § 405(g) seeking the judicial

review of the decision of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security

that the Plaintiff was not disabled within the meaning of the Social Security Act.

Before the Court is Plaintiff's motion for judgment on the record (Docket Entry No. 14)

contending, in sum, that the Administrative Law Judge ("ALJ") erred by failing to give proper

deference to the opinion of Carrie Brensike, Plaintiff's treating psychiatric nurse practitioner, and

that the ALJ failed to include all of the physical limitations on Plaintiff's residual functional capacity

to work. The Commissioner contends that the ALJ's decision is supported by substantial evidence.

After an evidentiary hearing and review of Plaintiff's medical records, the ALJ found as

follows:

- [Plaintiff stated that he is] unable to work because of high blood pressure, heart murmer, bipolar disorder and memory problems.

- The evidence shows that [Plaintiff's] blood pressure, though higher than normal at times, has not seriously damaged your heart, kidney, or other vital organs.

1

- Medical records show that [Plaintiff's] heartbeat and function are satisfactory for many normal activities.

- Although [Plaintiff] may experience bipolar disorder and memory problems, your records show that you are able to communicate with others, act in your own interest and perform most ordinary activities.

- We realize that [Plaintiff] can no longer perform the job of garbage collector driver as you described it. However, we concluded that [Plaintiff has] the ability to perform the job as most other workers describe it.

- We have determined that [Plaintiff's] condition is not severe enough to keep you from working. We considered the medical and other information, your age, education, training, and work experience in determining how [Plaintiff's] condition affects [his] ability to work.

- If your condition gets worse and keeps you from working, write, call or visit any Social Security office about filing another application.

(Docket Entry No. 12 at 75). After Plaintiff's request for reconsideration of that opinion, the Appeals Council upheld the ALJ's decision. Id. at 71.

## A. Review of the Record

On June 8, 2009, Dr. Steven R. Nyquist diagnosed Plaintiff with major depressive disorder, Recurrent. (Docket Entry No. 12, Administrative Record at 232).[1] Dr. Nyquist, however, found that Plaintiff's depression responded well to Cymbalta. When Plaintiff stopped his antidepressants for three months, Dr. Nyquist found that Plaintiff's "classic depressive symptoms" returned. Id. at 232. By June 8, 2009, Dr. Nyquist found Plaintiff feeling much better after resuming his medication, and that Plaintiff's neurovegatative symptoms and irritability were improving. Id. Dr. Nyquist declined to diagnose bipolar disorder. Id.

Plaintiff has also been treated at the Cool Springs Internal Medicine & Pediatrics Clinic for

---

[1]For clarity, the Court notes that its citations to the Administrative Record, throughout this section, refer to the original page number found in the Administrative Record.

chronic allergies, headaches, bipolar affective disorder, depressed mood, blindness of the left eye, hypertension and migraines. Id. at 238, 295, and 298-299. On November 18, 2011, Plaintiff complained of fatigue, cough, abdominal pain and myalgia. Id. at 295. Plaintiff has also had surgeries on his right thumb, middle finger and left ankle. Id. at 299.

On July 26, 2010, Plaintiff reported to Brandee Madden, a nurse practitioner at the Mental Health Cooperative, Inc., that his mood was "basically pretty good" despite his "occasional bad days" and inconsistent sleep. Id. at 352. Plaintiff had side effects from his headaches that were relieved by over-the-counter medication. Id. at 352.

On August 4, 2010, Dr. Mason Currey, Ph.D., a State psychiatric consultant opined that Plaintiff had moderate restrictions with daily living; maintaining social functions as well as concentration, persistence or pace. Id. at 260. Based upon his analysis, Dr. Currey opined that Plaintiff had the ability to understand and remember simple instructions; to maintain attention and concentration for at least two consecutive hours; to relate appropriately to the public, peers, and supervisors; and to adapt to infrequent change and set limited goals. Id. at 262, 266.

On September 29, 2010, Dr. Aileen H. McAlister, M.D., a State psychiatric consultant, opined that Plaintiff could understand, remember, and concentrate sufficiently to carry out simple 1-3 step tasks over an 8-hour work day with routine breaks, could interact with coworkers and the general public infrequently, that supervision should be supportive and non-confrontational, and that changes in the workplace should be introduced slowly. Id. at 280, 284.

In October 2010, Plaintiff described his condition as depressed with anxious panic attacks and excessive sleeping in the prior week. Id. at 349. In November 2010, Plaintiff experienced increased anxiety and fatigue, low mood, and anger outbursts, as well as stress from his continued

unemployment. Id. at 345. Plaintiff's medications were adjusted and, by December 2010, Plaintiff reported feeling much better without any sleep problems. Id. at 344-45. Plaintiff reported drinking 10 beers a week, but felt hopeless given his financial difficulties and lack of employment. Id. at 343.

By January 31, 2011, Plaintiff reported his increased medications were working well with his sleep and that his mood had improved, but his depression remained. Id. at 338. Plaintiff's energy and concentration were normal. Id. at 338. By February 2011, Plaintiff experienced increased depression and poor sleep, and stress over his disability hearing and lack of a job. Id. at 333-34. Plaintiff had moderate mood lability with intermittent euthymia, and his medications were adjusted Id. at 334.

By May 31, 2011, with Zyprexa, Plaintiff experienced a marked improvement in mood and sleep, but in June, Plaintiff reported that he was depressed, apathetic, and slept all the time, drinking one beer in 4 months. Id. at 324. Yet, with changes in his medication, Plaintiff's mood and sleep improved by July 2011 with less tension. Id. at 319. Plaintiff denied problems with concentration, motivation, and energy level and in August, 2011 reported he was "doing good." Id. at 315, 319.

During his October 11, 2011 visit with Nurse Practitioner Brensike, Plaintiff reported increased depression and irritability with his drinking 2-3 times a day, especially at night because he could not sleep. Id. at 313. Prior to this drinking, Plaintiff had been sober for about a year. Id. Nurse Practitioner Brensike noted the effects of alcohol on Plaintiff's mood and the efficacy of his medications. Id. at 314. In November 2011, Plaintiff reported improved sleep with restarting Zyprexia and stopping alcohol. Id. at 308. Decreasing Zyprexa helped his sedation, but he reported irritability, low mood, crying spells, and thoughts of "getting in his truck and leaving." Id. at 321. He stated that he snapped at people—mostly his girlfriend and mother. Id. By September 10, 2010,

Plaintiff described his medication as working well, but he experienced inconsistent sleep, non-disruptive auditory hallucinations, and variable moods. Id. at 350. The day before, Plaintiff did not get out of bed at all, and reported using alcohol 1-2 days a week. Id.

On November 18, 2011, Plaintiff told Dr. Bradley Bullock, M.D., that he cannot get hired given his medications. Id. at 295. Plaintiff described his current medications as working fairly well, but he lacked consistent sleep and feels "a little depressed at times." Id. at 295.

As to Plaintiff's mental ability to work, on November 18, 2011, Carrie Brensike, a psychiatric nurse practitioner at the Mental Health Cooperative completed a mental health assessment and found limitations in Plaintiff's ability to interact with the general public, supervisors, and coworkers as well as to respond appropriately in usual work settings or to accept changes in a routine work setting. Id. at 361. Nurse Practitioner Brensike noted that the Plaintiff "has alcohol dependence but symptoms would still be present in absence of this." Id.

On November 18, 2011, Nurse Practitioner Brensike opined that Plaintiff had mild restrictions in the ability to understand, remember, and execute simple instructions and to make judgments on simple work-related decisions. Brensike found Plaintiff moderately limited in his ability to perform these tasks involving complex instructions and work-related decisions. Id. at 360. Brensike opined that Plaintiff was significantly limited in interacting appropriately with others and responding appropriately to changes in a work setting. Id. at 361. Brensike cited Plaintiff's medication records. Id. at 360. Brensike noted that Plaintiff experienced periods of decompensation that markedly decreased his functioning and caused increased depression, anxiety, irritability and thoughts of suicide. Id. at 361. Brensike also cited Plaintiff's alcohol dependence, but explained that Plaintiff's symptoms would remain absent of his alcohol use. Id. at 361.

By December 14, 2011, Plaintiff complained of some irritability, mood instability, and anxiety to family gatherings during holidays. Id. 306. Brensike increased Plaintiff's Depakote medication dosage increased to 1500 mg from 1000 mg. Id. at 306-07. Plaintiff responded that sleep was improved and he generally felt rested the next day. Id. at 306 Plaintiff has consistently denied suicidal ideation and did not experience adverse side effects with his medications. Id. at 306, 308, 312, 313, 315, 316, 317, 325, 326, 328, 334, 338, 340, 344, 349.

## B. Conclusions of Law

The Social Security Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1); see also 42 U.S.C. § 1382c(a)(3). Judicial review is limited to whether the Commissioner's final decision is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). The Court must defer to the Commissioner's decision, even if substantial evidence supports a different result. Colvin v. Barnhart, 475 F.3d 727, 730 (6th Cir. 2007) (quoting Longworth v. Comm'r of Soc. Sec. Admin., 402 F.3d 591, 595 (6th Cir. 2005)).

In this action, Plaintiff assigns errors to the ALJ's failure to defer to nurse practitioner Brensike's opinions, and its affording undue weight the State's consultants' opinions. Plaintiff also argues that the ALJ's assessment of Plaintiff's residential functional capacity and Plaintiff's

credibility is erroneous.

The ALJ rejected Brensike's opinions as inconsistent with the medical evidence. Brensike, a nurse practitioner, is not a physician and the Commissioner contends that her opinions about Plaintiff's asserted limitations are unsupported by any physician or psychologist. (Docket Entry No. 12, Administrative Record at 362). The ALJ found Plaintiff's mood swings occurred in certain situations, involving a lay off from work, stress about his social security hearing and his failure to take his medications as directed. Id. at 20 (citing Exhibit 1F, Administrative Record at 232, and Exhibit 11F, Administrative Record 307, 314, 333-34). Contrary to Brensike's opinion, the ALJ found Plaintiff's alcohol consumption worsened his condition. Id. at 21 (citing Exhibit 11F, Administrative Record at 314). Brensike's progress notes reflect Plaintiff's "increase in mood instability [was] secondary to ETOH relapse." Id. at 314. The ALJ found Plaintiff's abstention from alcohol and regular taking of his medications caused Plaintiff's condition to stabilize. Id. at 308, 315, 319. For assessments of Plaintiff's limitations in the ability to interact with others, Brensike cited Plaintiff's thoughts of suicide, but Plaintiff consistently denied suicidal ideation at his visits with her and with other mental health professionals. Id. at 306, 308, 313, 315, 316, 325, 326, 328, 334, 338, 340.

Plaintiff cites Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013), for the proposition that where a treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" it must be given deference under 20 C.F.R. §§ 404.1527 and 416.927. Yet, Brensike is not a treating physician and does not possess the training abilities and assessments of a psychiatrist and psychologist who are experienced in disability issues. SSR 96-6p, 1996 WL 374180 (July 2, 1996).

Moreover, the Gayheart treating physician cited evidence for her opinion. Gayheart, 710 F.3d at 369. The ALJ assessed Brensike's treating notes with other evidence to conclude that Brensike's opinion is unsupported. Although Drs. Currey and McAlister conducted a record review, the ALJ cited numerous times to Brensike's progress notes about Plaintiff's mental health and her treatment for his assessment of Plaintiff's residual function. (Docket Entry No. 12, Administrative Record at 20-22). The ALJ also considered Dr. Nyquist's opinion that Plaintiff's medications work and that Plaintiff reacts to situational problems. Id. at 21. Here, Dr. Currey's and Dr. McAlister's opinions are consistent with Plaintiff's medical records.

As to Brensike's specific limitations on Plaintiff's ability to work, Dr. Currey's assessment was that Plaintiff can adapt to infrequent changes at work. Dr. McAlister's assessment was that Plaintiff can perform 1 to 3 step tasks, and can work in jobs with supportive and non-confrontational supervision with slow changes in the work. The ALJ found that Plaintiff can use, for a short period of time, machines without interacting with people or processing data. These occupations are unskilled work that is unlikely to require the worker to adapt to frequent changes. Id. at 23, 50. These jobs skills can be learned in 30 days or less and require little specific vocational preparation (SVP). 20 C.F.R. §§ 404.1568, 416.968.

As to the ALJ's evaluation of Plaintiff's subjective complaints, the ALJ must first "consider whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). Thereafter, the ALJ "must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." Id. In this evaluation, the ALJ must consider

8

medical records, laboratory findings, medical opinions, and the seven factors listed in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The latter factors are: (1) activities of daily living (ADLs), (2) location, duration, frequency, and intensity of the claimant's symptoms, (3) precipitating and aggravating factors, (4) medication the claimant has taken to alleviate his symptoms, (5) other treatment the claimant has received to relieve his symptoms, (6) measures the claimant has taken to relieve his symptoms, and (7) other factors. The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence . . . and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." Id.

Here, the ALJ reviewed Plaintiff's various complaints and testimony as well as his medical records. (Docket Entry No. 12, Administrative Record at 20). The ALJ cited Plaintiff's mood swings as situational such as with lay off from work, his disability hearing, failures to take his medications as directed, and alcohol use. Id. at 20-21. The ALJ noted that the medical evidence indicated that Plaintiff generally felt quite well, and that his medications worked well despite Plaintiff's claims of depression and fatigue. Id. at 20. The ALJ noted that Plaintiff's concentration was better than he admitted. Id. at 20-21. The ALJ explained how the record showed that his mental problems improved over time. Id. at 21. The ALJ cited Plaintiff's limited work history and that Plaintiff stopped work when he was laid off. Id.; see also 42 U.S.C.§ 423(d)(1)A) (to be found disabled, the inability to work must be caused by a medically determinable impairment and not by some other cause). Plaintiff's statements that no one would hire him due to his medications for bipolar disorder does not render him disabled. See 20 C.F.R. §§ 404.1566(c) and 416.966(c) (we will determine that you are not disabled if your RFC and vocational abilities make it possible for you to do work that

exists in the national economy, but you remain unemployed because of your inability to work or the hiring practices of employers).

As to Plaintiff's subjective complaints of mood swings, depression, fatigue, anger, difficulty concentrating, and trouble sleeping, the ALJ cited Plaintiff's medical treatment notes where Plaintiff told his health care providers that he did not have side effects from his medications. (Docket Entry No. 12, Administrative Record at 20). The ALJ considered the extensive mental health treatment Plaintiff had undergone, and the fact that his medications work fairly well. Id. at 20.

For these reasons, the Court concludes that the Commissioner's decision is supported by substantial evidence and should be affirmed.

An appropriate Order is filed herewith.

ENTERED this the 17 day of September, 2014.

WILLIAM J. HAYNES, JR.
Chief United States District Judge